UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ANTONIO CASTANEDA-MONROY, Petitioner, | § § § | |
| v. | § § | Case No. 1:15-cv-0052 (Criminal No. 1:14-cr-00738-1) |
| UNITED STATES OF AMERICA, Respondent. | § § § | |

## MAGISTRATE JUDGE'S
## REPORT AND RECOMMENDATION

Before the Court is Antonio Castaneda-Monroy's pro se "Motion Under 28 U.S.C. § 2255" (hereinafter, Castaneda-Monroy's "Motion" or "§ 2255 Motion"). Dkt. No. 1. For the reasons provided below, Castaneda-Monroy's § 2255 Motion lacks merit. Therefore, pursuant to Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts, it is recommended that Castaneda-Monroy's § 2255 Motion be summarily **DISMISSED** with prejudice. Additionally, it is recommended that the Court decline to issue a certificate of appealability.

### I. Jurisdiction

The Court has jurisdiction over Castaneda-Monroy's § 2255 Motion pursuant to 28 U.S.C. § 1331 and § 2255.

## II. Background and Procedural History

On September 17, 2014, Castaneda-Monroy pleaded guilty to the offense of being an alien unlawfully found in the United States after deportation, having previously been convicted of a felony, in violation of 8 U.S.C. §§ 1326(a) and 1326(b)(1). *See United States of America v. Castaneda-Monroy*, No. 1:14cr00738-1, CR Dkt. No. 25 at 1.[1] On February 2, 2015, Senior United States District Judge Hilda Tagle sentenced Castaneda-Monroy to 30 months of imprisonment, with no term of supervised release. *Id.* at 2-3. Judgment was entered on February 9, 2015. *Id* at 1. Castaneda-Monroy did not appeal. Dkt. No. 1 at 2.

On March 15, 2015, Castaneda-Monroy filed the instant § 2255 Motion. Dkt. No. 1.[2] The Government responded through a motion for partial summary judgment on June 12, 2015, asserting that the majority of Castaneda-Monroy's claims should be dismissed on summary judgment grounds. Dkt. No. 11. On February 3, 2016, the Court ordered Castaneda-Monroy's former counsel, Hector Casas, to file an affidavit responding to Castaneda-Monroy's claim that Casas failed to file a requested appeal. Dkt. No. 17. Casas submitted a sworn affidavit on February 8, 2016. Dkt. No. 19. The Court appointed counsel to represent Castaneda-Monroy, and an evidentiary hearing was held on June 24, 2016. Dkt. Nos. 23, 32.

---

[1] Hereinafter, Castaneda-Monroy's criminal case docket entries ("CR Dkt. Nos.") will be referred to only by their docket entry numbers.

[2] Castaneda-Monroy indicates that he placed his § 2255 Motion in the prison mailing system on March 15, 2015. Dkt. No. 1 at 13. Accordingly, the Court will consider his Motion filed on that date. *See generally Spotsville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998) (noting that, for statute of limitations purposes, a pro se prisoner's application is filed on the day it is placed in the prison mailing system); *United States v. Young*, 966 F.2d 164, 165 (5th Cir. 1992) (applying the mailbox rule to pro se prisoner proceedings under 28 U.S.C. § 2255).

### III. Legal Standards

**A. 28 U.S.C. § 2255.**

Pursuant to 28 U.S.C. § 2255, a defendant may move to vacate, set aside or correct his sentence if: (1) the sentence was imposed in violation of the Constitution or the laws of the United States; (2) the district court was without jurisdiction to impose the sentence; (3) the sentence imposed was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). The nature of a § 2255 collateral challenge is extremely limited, being reserved for instances of constitutional or jurisdictional magnitude. *United States v. Shaid*, 937 F.2d 228, 232 (5th Cir. 1991). If an error is not of constitutional magnitude, the movant must show that the error could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice. *United States v. Smith*, 32 F.3d 194, 196 (5th Cir. 1994).

**B. Ineffective Assistance of Counsel.**

The "Sixth Amendment guarantees a[ll] defendant[s] the right to have counsel present at all 'critical' stages of the criminal proceedings" instituted against them. *Missouri v. Frye*, 566 U.S. 134, 140 (2012) (citing *Montejo v. Louisiana*, 556 U.S. 778, 786 (2009)). Critical stages include not only trial, but also pretrial proceedings—including the plea-bargaining process. *Laffler v. Cooper*, 566 U.S. 156, (2012); *Padilla v. Kentucky*, 559 U.S. 356, 373 (2010); *Hill v. Lockhart*, 474 U.S. 52, 57 (1985). Even though sentencing does not concern the defendant's guilt or innocence, ineffective assistance of counsel during a sentencing hearing is also constitutionally impermissible. *Laffler*, 566 U.S. at 165.

In *Strickland v. Washington*, the Supreme Court held that in order to succeed on an ineffective assistance of counsel claim, a defendant must show both: (1) that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) "the deficient performance prejudiced the defense," and shows "errors so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." 466 U.S. 668, 687 (1984). Courts need not address both inquiries if the defendant does not sufficiently support one prong, nor must the court address the test in the same order. *Id.* at 697. Under this standard, the defendant must show that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms. *Id.* at 687. As it is easy to second-guess counsel's performance after a conviction or adverse sentence, a fair assessment of performance requires reconstructing the circumstances of counsel's conduct from their perspective at the time rather than look towards the "distorting effects of hindsight." *Id.* at 689. As such, counsel is strongly presumed to have performed adequately, and made decisions using reasonable professional judgment. *Id.* at 690. Finally, the sufficiency of counsel's representation may be determined, and indeed substantially influenced, by the defendant's own statements and actions. *Id.* at 691.

Because a convicted defendant must satisfy both prongs of the *Strickland* test, a failure to establish either deficient performance or actual prejudice under that test will ordinarily make it unnecessary to examine the other prong. *Strickland*, 466 U.S. at 700; *Ransom v. Johnson*, 126 F.3d at 716, 721 (5th Cir. 1997); *United States v. Seyfert*, 67 F.3d 544, 547 (5th Cir. 1995). Therefore, failure to establish that counsel's

alleged performance fell below an objective standard of reasonableness renders moot the issue of prejudice. *See United States v. Hoskins*, 910 F.2d 309, 311 (5th Cir. 1990); *Thomas v. Lynaugh*, 812 F.2d 225, 229-30 (5th Cir. 1987). It is also generally unnecessary to consider whether counsel's performance was deficient where there is an insufficient showing of prejudice. *See Black v. Collins*, 962 F.2d at 401; *Martin v. McCotter*, 796 F.2d 813, 821 (5th Cir. 1986).

## IV. Discussion

Castaneda-Monroy alleges that Casas: (1) "only paraphrased" the presentence investigation report ("PSR") when reviewing it with him, and did not object to "incorrect facts" therein or that Castaneda-Monroy's criminal history was being used to enhance his sentence, (2) refused to request a downward departure for cultural assimilation during Castaneda-Monroy's sentencing, and (3) refused to appeal or withdraw within the timeframe for a direct appeal. Dkt. No. 1 at 3. Additionally, Castaneda-Monroy claims that his sentence was illegal as it did not comply with the United States Sentencing Guidelines because "the Court gave an upward departure for a 30 year old probated sentence." *Id.* at 5.

### A. Ineffective Assistance of Counsel Claims

#### *1. Alleged failure to object to the PSR*

In preparing the PSR, the United States Probation Officer ("USPO") assessed a 12-level enhancement to Castaneda-Monroy's base offense level pursuant to § 2L1.2(b)(1)(A)(vii) of the 2014 United States Sentencing Guidelines. CR Dkt. No. 16 at 5. This provision states: "[i]f the defendant previously was deported, or unlawfully

remained in the United States, after an alien smuggling offense, increase by 16 levels if the conviction receives criminal history points under Chapter Four or by 12 levels if the conviction does not receive criminal history points." U.S.S.G. § 2L1.2(b)(1)(A)(vii). Criminal history points may only be assessed within the period of time set out in U.S.S.G. § 4A1.2(e), which provides: "[a]ny prior sentence of imprisonment exceeding one year and one month that was imposed within fifteen years of the defendant's commencement of the instant offense is counted." U.S.S.G. § 4A1.2(e). Castaneda-Monroy was previously convicted of the alien smuggling offense of transporting a certain alien within the United States in 1985, but because of the age of the conviction, no criminal history points were assessed. *Id.* Since the prior conviction did not receive criminal history points, Castaneda-Monroy's base offense level was enhanced by 12, not 16, levels. U.S.S.G. § 2L1.2(b)(1)(A)(vii). The Court adopted the findings of the report. CR Dkt. No. 34 at 10.

In sum, the Court sentenced Castaneda-Monroy at the low end of the advisory guideline range pursuant to the level he scored, 17. And, Casas did not provide ineffective assistance of counsel by withholding an objection to the enhancement for Castaneda-Monroy's past conviction. Counsel is granted substantial latitude to pursue certain tactical choices over other possible avenues, and counsel is not ineffective for not pursuing meritless objections. *United States v. Fields*, 565 F.3d 290, 296 (5th Cir. 2009). There was no basis for Casas to object to the 12-level enhancement for Castaneda-Monroy's 1985 conviction. Moreover, to the extent that Casas could reasonably advocate for Castaneda-Monroy on this issue, he did so. Casas addressed Castaneda-Monroy's concerns about the enhancement during sentencing,

emphasizing the age of the 1985 conviction in arguments made to the Court. CR Dkt. No. 34 at 8 ("[H]e wants the Court to take into consideration that that enhancement is 30 years old[.]"). Casas's conduct did not fall below an "objectively reasonable level of performance." *Williams v. Taylor*, 529 U.S. 362, 390-91 (2000).

Castaneda-Monroy has also not identified any "incorrect facts" regarding his criminal history in the PSR; he has only asserted that the 1985 conviction should not have been used to enhance his sentence. *See United States v. Zuniga*, 720 F.3d 587, 590 (5th Cir. 2013) ("Rebuttal evidence [regarding accuracy of a PSR] must consist of more than a defendant's objection; it requires a demonstration that the information is 'materially untrue, inaccurate or unreliable.'") (citation omitted). While Castaneda-Monroy asserts that Casas "paraphrased" the PSR and should have raised an objection, he fails to identify a meritorious objection that could have been made regarding the PSR. Therefore, his first ineffective assistance of claim lacks merit.

### 2. *Alleged failure to request a downward departure*

Castaneda-Monroy's second claim is that Casas "refused to request a downward departure for assimilation that [Castaneda-Monroy] was entitled to argue for." Dkt. No. 1 at 3. "Cultural assimilation is a permissible basis for downward departure[.]" *United States v. Rodriguez-Montelongo*, 263 F.3d 249, 433-434 (5th Cir. 2001). The commentary to U.S.S.G. § 2L1.2 reads as follows:

> There may be cases in which a downward departure may be appropriate on the basis of cultural assimilation. Such a departure should be considered only in cases where (A) the defendant formed cultural ties primarily with the United States from having resided continuously in the United States from childhood, (B) those cultural ties provided the primary motivation for the defendant's illegal reentry or continued presence in the United States, and (C) such a departure is not likely to

increase the risk to the public from further crimes of the defendant. Cmt. 9, U.S.S.G. § 2L1.2. Here, Castaneda-Monroy did not qualify for a downward departure based on cultural assimilation as described by the commentary to the sentencing guidelines. First, the commentary states the departure should be considered only when the defendant has formed cultural ties primarily with the United States "from having resided continuously in the United States from childhood." *Id.* The PSR in Castaneda-Monroy's case reflects that he arrived in the United States in or around 1980, when he would have been 22 years old. CR Dkt. No. 16 at 14. Second, Castaneda-Monroy's repeat past offenses would likely preclude him from satisfying the third element of the departure qualifications, that such a departure would not be likely to increase risk to the public from further crimes of the defendant. *Flores-Diaz v. United States*, 516 F. Supp. 2d 818, 828 (S.D. Tex. 2007). In addition to his prior conviction for an alien smuggling felony offense in 1985, Castaneda-Monroy had been convicted for unlawful possession of a controlled drug, public intoxication, and other illegal entries into the United States. CR Dkt. No. 16 at 6-9. The PSR also notes various other occasions on which Castaneda-Monroy was arrested without facing criminal prosecution. CR Dkt. No. 16 at 9-13. Even where a defendant would otherwise qualify for a downward departure based on cultural assimilation, courts in the Southern District of Texas have held that repeated past offenses should preclude the downward departure from being assessed. *Flores-Diaz*, 516 F. Supp. 2d at 828; *United States v. Garcia-Mejia*, No. H-06-0403, 2006 WL 2524091, at *8 (S.D. Tex. Aug. 31, 2006). Because Castaneda-Monroy was not eligible for a downward departure based on cultural assimilation under the sentencing guidelines commentary, Casas

was not constitutionally ineffective in failing to raise this request on behalf of his client.

### 3. *Alleged failure to file a notice of appeal*

At the heart of Castaneda-Monroy's Motion is his allegation that Casas refused to perfect an appeal on his behalf or withdraw as counsel during the timeframe in which a notice of appeal could be filed, thus denying Castaneda-Monroy his right to an appeal. Dkt. No. 1 at 3. As noted above, the Court appointed counsel for Castaneda-Monroy, and held an evidentiary hearing on this issue on June 24, 2016. Dkt. No. 32. Having heard testimony from both Castaneda-Monroy and Casas, and reviewed all corresponding exhibits and filings made part of the record, the Court finds that Castaneda-Monroy's allegations lack merit.

A defendant claiming that his counsel failed to file a notice of appeal may establish ineffective assistance of counsel by showing that his counsel provided ineffective assistance and that, but for his counsel's ineffective assistance, he would have timely appealed. *Roe v. Flores–Ortega*, 528 U.S. 470, 476-477 (2000). Where counsel disregards the defendant's wish to appeal, counsel's performance is considered ineffective, regardless of whether the defendant can show that he possessed a meritorious basis for appeal. *Id.* at 477. If a defendant demonstrates by a preponderance of the evidence that he directed his counsel to file an appeal, prejudice is presumed and the defendant is entitled to an out-of-time appeal. *United States v. Tapp*, 491 F.3d 263, 266 (5th Cir. 2007). The defendant need only show "that there is a reasonable probability that, but for counsel's failure, he would have timely appealed." *Id.* at 265. Further, this standard applies even when the defendant has

entered into plea agreement waiving his right to appeal. *Id.* at 266; *United States v. Cong Van Pham*, 722 F.3d 320, 326 (5th Cir. 2013).

Where a defendant has not specifically directed his counsel to file an appeal, the Court has an obligation to determine whether his counsel failed to consult with him about an appeal. *Flores-Ortega*, 528 U.S. at 478. If counsel failed to consult with the defendant regarding an appeal, the Court must also determine whether this failure constituted deficient performance. *Id*. The Fifth Circuit has addressed how a court analyzes ineffectiveness of counsel claims "when the defendant has not clearly conveyed his wishes [regarding an appeal] one way or the other [:]"

> Under *Flores–Ortega*, the first *Strickland* prong begins with the question whether counsel "consulted" with the defendant regarding an appeal. "Consulting" is a term of art that means "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." "If counsel has consulted with the defendant, the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal."
>
> If, however, counsel failed to consult with the defendant about an appeal, then the question is whether that failure was unreasonable because it breached the duty to consult. "[C]ounsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are non-frivolous grounds for appeal) or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." The existence of a duty to consult is assessed in light of "all the information counsel knew or should have known." Whether the conviction followed a trial or a guilty plea is "highly relevant," although not determinative, as is whether the defendant waived his right to appeal and whether he received a sentence for which he bargained. The Supreme Court predicted that district courts would find a duty to consult "in the vast majority of cases."

*Cong Van Pham*, 722 F.3d at 323 (footnotes, citations and formatting omitted).

Casas submitted an affidavit stating that: (1) he spoke with Castaneda-Monroy regarding his appellate rights at the Willacy County Detention Center on February 4, 2015, (2) Castaneda-Monroy never asked Casas to perfect an appeal, and Casas had no reason to believe he wanted to appeal, because Castaneda-Monroy "made it clear two times he did not want an appeal," and (3) Casas had discussed the impact of Castaneda-Monroy's plea agreement and its appellate waiver provision, specifically that he would be giving up the right to appeal except under some limited circumstances. Dkt. No. 19 at 1-2. Attached to Casas's affidavit is a Federal Public Defender's Office form titled "Warning Regarding Waiver of Appeal" which relays a number of understandings the signee-defendant agrees to, including that he has entered into a plea agreement with the Government, waived his right to appeal in exchange for certain promises by the Government, has been warned about the possible ramifications of pursuing an appeal in spite of the waiver, and that the defendant discussed the decision whether to appeal with his counsel.[3] Dkt. No. 19-1. The form also lists four possible choices for a defendant to initial next to so as to indicate his decision regarding an appeal—to not appeal, to appeal only the sentence, to appeal only the conviction, or to appeal both the sentence and conviction. *Id.*; *see also* Dkt. No. 33 at 6. All three of Castaneda-Monroy's initials, "ACM," appear next to the option indicating he did not wish to appeal. Dkt. No. 19-1. The form also contains a crossed-through initial "C" on the line where a defendant would indicate he wished to appeal only his conviction, and the crossed-through initial "M" on the line on the line where a defendant would indicate he wished to appeal only his sentence. *Id.*

---

[3] The copy of the form signed by Castaneda-Monroy is in Spanish. Dkt. No. 19-1. The Government provided an English version of the form as an exhibit at the evidentiary hearing. Dkt. No. 33 at 6.

According to Casas, after Castaneda-Monroy stated he did not want to appeal during their meeting at the detention center, Casas explained that Castaneda-Monroy's initials and signature would be required at the bottom of the appellate decision form. Dkt. No. 19 at 3. Casas maintains that Castaneda-Monroy then wrote one initial each on three separate lines indicating varying appellate decisions (no appeal, appeal of conviction, and appeal of sentence). *Id.* Casas's affidavit states that he subsequently told Castaneda-Monroy the form was not filled out correctly, and that he needed "all three of [Castaneda-Monroy's] initials on the line which indicates his choice regarding an appeal." *Id.* Casas represents that Castaneda-Monroy then added his last two initials on the first line, indicating he did not wish to appeal. *Id.* Casas drew a line through the other two single initials next to the "appeal of conviction" and "appeal of sentence" options to reflect Castaneda-Monroy's confirmed decision not to appeal. *Id.* at 4.

Casas repeated this account of events during his testimony at the evidentiary hearing before the Court. Dkt. No. 34. He stated his belief that Castaneda-Monroy misunderstood the instructions about how to correctly initial the appellate decision form because it had to be handed to him by a jail staff member. *Id.* at 20. He also clarified that after Castaneda-Monroy "initialed the form improperly," the two had a brief second discussion in which Castaneda-Monroy again confirmed that he did not want to appeal. *Id.* at 41. This second discussion was one of the two occasions in which Castaneda-Monroy made it clear he did not wish to appeal, the other being when Casas initially arrived at the detention center to ascertain his appellate decision. *Id.* at 45. Casas maintained that the first time he heard Castaneda-Monroy wanted to

appeal was upon the filing of the instant Motion. *Id.* at 32.

In his Motion, Castaneda-Monroy asserts that Casas "refused to appeal or withdraw so another attorney could be appointed" and "waived [Castaneda-Monroy's] right to appeal by refusing to withdraw within the time for direct appeal." Dkt. No. 1 at 3. During the evidentiary hearing, Castaneda-Monroy testified that Casas provided him with the appellate decision form, but only told him, "I don't believe there's a reason for us to appeal," and directed Castaneda-Monroy to sign the form. Dkt. No. 34 at 53. Castaneda-Monroy maintained he was not wearing his reading glasses at the time, so could not read the form he signed, and he could not remember whether Casas read the form to him or not. *Id.* He further testified that Casas never asked him if he wanted to appeal, and that since he did not have "good communication" with Casas, he "didn't know what to do" as far as an appeal. *Id.* at 54. Later, he also asserted that Casas specifically told him he did not have a right to appeal, and only directed him to sign the appellate decision form without explaining the advantages or disadvantages of any of the presented options. *Id.* at 57.

Castaneda-Monroy's testimony was belied by inconsistencies. On cross-examination, Castaneda-Monroy admitted that he never asked Casas to file an appeal, contradicting the repeated assertions in his Motion that Casas had refused to file the appeal. Dkt. No. 34 at 62. Castaneda-Monroy's version of events also varied widely: from Casas telling him there was not a reason to appeal (Dkt. No. 34 at 53), to Casas telling him he had no *right* to appeal (Dkt. No. 34 at 57), to Casas "just [saying] to sign" the appellate decision form (Dkt. No. 34 at 63). Castaneda-Monroy also refuted his own characterization of his relationship with Casas—that Casas would only speak

with him to "reprimand him"—by later acknowledging that Casas argued for a lower sentence on his behalf during sentencing by incorporating personal reasons Castaneda-Monroy had returned to the United States which could only have been gleaned from conversation exceeding mere "reprimands." Dkt. No. 34 at 63-64.

In his testimony, Casas consistently maintained that Castaneda-Monroy said he did not want to appeal. Dkt. No. 34 at 20, 21, 32, 34, 37, 41. He stated that Castaneda-Monroy had expressed no dissatisfaction with his sentence, which had been assessed at the low end of the advisory guideline range. *Id.* at 34. Casas also stressed that he consulted with Castaneda-Monroy to ask whether he wanted to appeal, advised him of the advantages and disadvantages of appealing, and did not approach Castaneda-Monroy with any predetermined directive on which appellate decision to select. *Id.* at 18, 29-30. Casas acknowledged that he placed a "dot" next to the appellate decision form's line indicating the signee did not wish to appeal, but only at the detention center after discussing appellate rights and hearing Castaneda-Monroy state he did not wish to appeal, for the purpose of showing Castaneda-Monroy where to initial to reflect his decision. *Id.* at 20. Casas had also included this information in his affidavit prior to the hearing. Dkt. No. 19 at 2. In sum, Casas's version of events—that Castaneda-Monroy twice indicated he did not wish to appeal, that Castaneda-Monroy never asked for an appeal, and that he had fully discussed the appellate options with Castaneda-Monroy—remained unchanged from submission of his affidavit through the course of the evidentiary hearing. The Court finds Casas's account of events to be more credible than Castaneda-Monroy's inconsistent allegations.

Accordingly, Castaneda-Monroy has failed to show, by a preponderance of the evidence, that Casas did not file a requested notice of appeal. Castaneda-Monroy has similarly failed to establish that Casas neglected discussing his appellate rights. Therefore, Castaneda-Monroy's claim alleging that Casas failed to file a notice of appeal on Castaneda-Monroy's behalf as instructed should be dismissed.

### B. Castaneda-Monroy's Remaining Claim

Castaneda-Monroy's second claim restates the objection he asserts Casas should have made regarding his sentence. Dkt. No. 1 at 5. He argues that his sentence was illegal because the Court "relied upon a factually inaccurate criminal history" to enhance his sentence; specifically, he challenges the notion that a thirty-year old conviction could support a sentencing enhancement. *Id.* He has not identified any erroneous aspect of the criminal history provided in the PSR, but has instead only asserted that the Court should not have relied on the 1985 conviction due to its age. As discussed above, however, Castaneda-Monroy's sentence was in compliance with and at the low end of the advisory sentencing guidelines. His second claim, therefore, is meritless.

## V. Certificate of Appealability

A certificate of appealability shall not issue unless the petitioner/movant makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requires a "showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed

further." *Slack v. McDaniel*, 529 U.S. 473, 475 (2000) (internal quotations and citations omitted). Said another way, where claims have been dismissed on the merits, the movant/petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* at 484. Where claims have been dismissed on procedural grounds, the movant/petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

District courts may deny certificates of appealability sua sponte, without requiring further briefing or argument. *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). A certificate of appealability should not issue in this case because Castaneda-Monroy has not made a substantial showing of the denial of a constitutional right.

## VI. Recommendation

It is recommended that: (1) Castaneda-Monroy's § 2255 Motion be **DISMISSED** with prejudice, (2) the Court decline to issue a certificate of appealability, and (3) the Clerk of the Court be directed to close this case.

## VII. Notice to Parties

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds

of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996).

Signed on this 2nd day of April, 2018.

_____
**Ignacio Torteya, III**
**United States Magistrate Judge**